**UNITED STATES of America**

**v.**

**Joseph VOCCOLA.**

**UNITED STATES of America**

**v.**

**Pasquale MANOCCHIO.**

Nos. Cr. 84–054–015, Cr. 84–054–025.

United States District Court,
D. Rhode Island.

Jan. 23, 1985.

Don O. Burley, Dept. of Justice, Washington, D.C., Lincoln C. Almond, U.S. Atty., Anthony C. DiGioia, Asst. U.S. Atty., Providence, R.I., for plaintiff.

McKenna, Greenwood & Feinstein, Kevin A. McKenna, Providence, R.I., for defendants.

*Memorandum and Order*

SELYA, District Judge.

Joseph Voccola and Pasquale Manocchio were charged with assorted violations of 15 U.S.C. §§ 1984, 1988(b), and 1990c in a fifteen count information filed by the United States Attorney for the District of Rhode Island on July 25, 1984. The essence of the charges (all misdemeanors) was that the defendants, as the operators of a proprietorship doing business under the name and style of "Granada Auto Sales," knowingly and wilfully (i) reset and altered odometers so as to reduce the mileage reflected thereon and (ii) prepared and delivered false odometer statements to purchasers of motor vehicles in making the written disclosures required by, inter alia, 49 C.F.R., Part 580. Each defendant pleaded not guilty to all charges on August 6, 1984.

Discussions thereupon ensued between the government attorneys, on the one hand, and the defense team, on the second hand. On September 4, 1984, the court counselled the defendants in open court concerning the risks inherent in their dual representation by a single attorney. *See United States v. Martorano*, 610 F.2d 36, 39 (1st Cir.1979); *United States v. Donahue*, 560 F.2d 1039, 1043–44 (1st Cir.1977); *United States v. Foster*, 469 F.2d 1, 5 (1st Cir. 1972). Each defendant acknowledged that he understood the potential hazards of joint representation, yet wished to proceed. Thereafter, pursuant to a stipulation of facts and a nonbinding plea agreement, Fed.R.Crim.P. 11(e)(1)(B), each defendant pled guilty to the same three counts of the information (counts 3, 6, and 11). The court, after ascertaining that the guilty pleas were freely, voluntarily, and knowingly made, and that they were platformed by an adequate factual underpinning, accepted the pleas and continued the cases for sentencing. (The plea agreements contemplated that sentencing would be deferred until at least December 1, 1984.)

While each defendant entered into a separate written plea agreement, the two are quite similar. Initially, each defendant agreed that an attached stipulation of facts accurately described his engagement in recycling odometers from 1979 forward. The substance of the agreements then detailed an exchange of promises between the parties. The bargains contained in each plea agreement which are central to the issues now sub judice are illustrated by the following excerpts from Voccola's contract:

\*     \*     \*     \*     \*     \*

4. The defendant agrees to plead guilty to counts 3, 6, and 11 of the Information, and the government agrees (a) that at the time of sentencing, it will drop the remaining counts of the Information, and (b) that it will not prosecute the defendant for any activities set forth in the Stipulation other than the three counts to which the defendant is now agreeing to plead guilty....

\*     \*     \*     \*     \*     \*

6. At the time of sentencing, the government will make no recommendation concerning what, if any, term of imprisonment should be imposed by the Court.

7. The government reserves the right to recommend to the Court whatever fine it deems appropriate in light of all relevant factors, including the nature of defendant's offenses, the defendant's cooperation, and the defendant's economic circumstances.

8. The government reserves the right, at sentencing or at any other time,

to correct any misstatements or misrepresentations made by the defendant and to answer any inquiries of the Court.

9. The government may provide any relevant information it possesses to both the Court and the Probation Service.

\* \* \* \* \* \*

11. The defendant states that he understands that the maximum punishment for this offense is one year imprisonment or $50,000.00, or both, per count, and that the Court will be free to impose any sentence it deems appropriate up to the maximum allowed by law.

\* \* \* \* \* \*

16. The defendant and his attorney both state that this agreement constitutes the entire agreement between the defendant and the government and that no other promises or inducements have been made, directly or indirectly, by any Assistant United States Attorney, any attorney from the Department of Justice, or any other agent of the United States concerning any plea to be entered in this case. . . .

Each plea contract was signed by the prosecutors, the defendant, and defense counsel. The parties did not purport to bind the court in regard to imposition of sentence. In view of the near-identity of the plea agreements, the court will sometimes, for each in reference, allude to Voccola's plea agreement (Agreement) only.

Following some procedural skirmishing anent the nature, scope, and contents of the presentence report (not directly material to this discussion), a sentencing hearing was conducted on January 3, 1985. After an extended allocution, the court sentenced Voccola to one year in prison on each of counts 3 and 11 (to be served concurrently); imposed a commited fine of $25,116 on count 3 as well [1]; and, as to count 6, sentenced him to one year in prison (consecutive to the sentences levied on counts 3 and 6), but suspended the imposition of that sentence in lieu of a three year probationary period. Manocchio received an almost consubstantial sentence. The principal difference was that the fine, as to him, was imposed on count 6, to be payable over the probationary period. Execution of sentence was stayed until February 4, 1985. All of the remaining counts of the information were dismissed.

On January 14, 1985, the defendants filed the instant joint motion to vacate the sentences imposed on January 3 and for resentencing before a new judge. The gist of the motion is the asseveration that the prosecutor, though giving lip service to his agreement to "make no recommendation concerning what, if any, term of imprisonment should be imposed," Agreement at ¶ 6, undercut the bargain by "clearly, if obliquely, indicat[ing] that [the government] felt a jail sentence was appropriate." Defendants' Memorandum at 6. The defendants had interposed no objection on this ground to the prosecuting attorney's summation at the time of sentencing. A hearing on the motion was commenced on January 18, 1985 and completed on January 22.[2] Decision was reserved. As the gravamen of the motion is that the sentences were for this reason handed down in an illegal manner, the motion appears to be timely. Fed.R.Crim.P. 35(a).[3]

---

1. The amount of the fine was computed by the court by taking the before and after odometer readings from a single automobile with which the defendants had by their own admission toyed, and calculating the fine to equal $1.00 for each mile that the odometer had been rolled back.

2. At the outset of the January 22 session, the defendants amended their motion by deleting their request to be resentenced by a different judge. Though the court need not squarely confront this twist in view of its holding that the original sentences should stand, see text post, it is well to observe that the modified request, if honored, would create a bizarre sort of anomaly.

3. The court notes, however, that defense counsel apparently failed seasonably to give the special notice required by the plea agreement:

> Counsel for the defendant ... has agreed that, if any statements are made by an Assistant United States Attorney, any attorney from the Department of Justice, or any other agent of the United States at any time in the future which are at variance with the contents of this agreement, he will notify the United States Attorney in writing of the details thereof within two days after the statement is made.

The yardstick by which the prosecutor's conduct must be measured is well defined. The Supreme Court has explicitly cautioned that principles of fundamental fairness must attend the implementation of a plea agreement:

> [T]his phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

■■■ The court's inquiry is one of objective fact, not of subjective intent: whether the plea agreement has been violated *vel non.* "That the breach of agreement was inadvertent does not lessen its impact." *Id.* And, it is irrelevant to the inquiry whether or not the sentencing judge was influenced in any degree by the prosecutor's comments. *Id.* at 262–63, 92 S.Ct. at 498–99; *United States v. Brown,* 500 F.2d 375, 377–78 (4th Cir.1974).[4] It is likewise immaterial that, at the sentencing, the defendants were offered the opportunity to withdraw their guilty pleas, yet eschewed that course. If the prosecutor has strayed from the confines of the plea agreement, the defendants may well be entitled to specific performance of the bargain which they had struck, that is, resentencing before a different judge (*but see* note 2, *ante*) in a proceeding cleansed of the interdicted prosecutorial misconduct. *Santobello,* 404 U.S. at 263, 92 S.Ct. at 499; *United States v. Corsentino,* 685 F.2d 48, 52 & n. 2 (2d Cir.1982); *United States v. Block,* 660 F.2d 1086, 1090 (5th Cir.1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1753, 72 L.Ed.2d 164 (1982); *United States v. Shanahan,* 574 F.2d 1228, 1231 (5th Cir. 1978). And, *Santobello* and its progeny proscribe not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them.

The defendants place primary reliance on *United States v. Brown, supra,* a decision by a divided panel of the Fourth Circuit. But, *Brown* is plainly distinguishable. There, the prosecution had agreed to make a particular recommendation—and did so; but the government immediately took away with the left hand what it had given with the right. After parroting the stipulated recommendation, the prosecutor informed the court that he had "some problems with [it]." *Id.,* 500 F.2d at 377. The *Brown* majority noted that the defendant had a reasonable expectancy that a prearranged recommendation would be expressed to the sentencing judge "with some degree of advocacy," *id.,* and that the standard was not met by what it termed the prosecutor's "halfheartedness." *Id.*

Unlike *Brown,* however, the case at bar was not one involving an affirmative suggestion. The government, as to incarceration, had agreed only to "make no recommendation concerning what, if any, term of imprisonment should be imposed." Agreement at ¶ 6. The prosecutor so noted, and did not at any time waver from this posi-

---

Agreement at ¶ 17.
But, inasmuch as the court is able to resolve the motion on substantive grounds, *see* text *post,* the effect (if any) of a defense attorney's failure to abide by such a limitation may be left to another day.

**4.** Though not raised by the United States, it seems an open question as to whether this portion of the *Santobello* rule must be reexamined in light of the Court's recent application of the "harmless error" principle to criminal cases involving ineffective assistance of counsel. *See Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 2064, 2067–68, 80 L.Ed.2d 674 (1984). In the case at bar, the prosecutor's remarks at the sentencing hearing were not, in the court's judgment, an attempt to subvert the plea agreement. In any event, they had no catalytic effect on the sentences actually imposed. The court can state with absolute assurance that, if the prosecutor went too far, the error was harmless beyond a reasonable doubt in that it did not actually prejudice the accuseds. But, because the prosecutor did not venture into forbidden terrain, *see* text *post,* the court need not further pursue this point.

tion. The Agreement was plain: apart from silence as to "what, if any, term of imprisonment" was appropriate, the government retained a free hand. In contradistinction to *Corsentino,* 685 F.2d at 51, there was no "substantial ambiguity in the prosecutor's promise." The history of the plea negotiations between the government and the defendants, which was fully examined by the court immediately prior to the January 3 sentencings, bears out that all parties understood the dimensions of the plea agreements.[5]

■ Under virtually all circumstances, the government has the duty to disclose to the court pertinent factual information in its possession.[6] *Block,* 660 F.2d at 1091–92 & n. 7; *United States v. Garcia,* 544 F.2d 681, 685 n. 2 (3d Cir.1976). And in this case, the prosecutor's leeway was considerably more broad: the government had expressly reserved the right to correct misstatements or misrepresentations made by or on behalf of the defendants, Agreement at ¶ 8, and to "provide any relevant information it possesses" to the court. *Id.* at ¶ 9. The government had carved out a similar reservation as to revelation of its knowledge to the probation department, *id.,* and the prosecutor said nothing of consequence which had not theretofore been included in the "prosecution version" of the offenses contained in the presentence report.

Most important, the government was at liberty, under the plea agreements at bar, "to recommend to the court whatever fine it deems appropriate." *Id.* at ¶ 7. The very comments about which the defendants most bitterly complain were made in the course of the prosecutor's exhortation that the court levy maximal fines ($50,000 per defendant per count). Taken in context, the prosecutor's speech was a seamless web spun of the enduring thread of harm to the collective pocketbooks of the faceless citizens who had been duped by the defendants' activities. It built to the logical climax that:

> In any event, your Honor, the damage cost to consumers in this case by the defendants' activities is staggering.
>
> The government believes that the fine should be commensurate with the consumer damage that has been caused. The maximum fine in this case for three counts of odometer violations is $150,-000.00. The government believes that the defendants' financial worth merits a fine of the maximum in this case, your Honor.

Those remarks were entirely appropriate for the court's consideration in assessing the amounts of the fines; and the defendants, by their agreements, opened the door wide for just such an analysis.[7] And, the stipulation of fact belies the spavined argument that all comment should have been limited to the three particular instances which formed the basis for counts 3, 6, and 11.

---

**5.** To the extent that the defendants, at oral argument on this motion, attempted to resuscitate contentions previously made and rejected in their motions to strike portions of the presentence report, *see United States v. Voccola,* 600 F.Supp. 1534 (D.R.I.1985) (*ore tenus bench decision denying motions to strike*), the court will not repastinate that tired ground. The January 3 rulings are, in those respects, the law of the case. See *Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *United States v. DeJesus,* 752 F.2d 640, 642–43 (1st Cir.1985).

**6.** This case does not raise the question of whether an agreement between the government and an accused providing for the withholding of information germane to sentencing from the court is void as contravening public policy. *Cf.* 18 U.S.C. § 3577 ("no limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); Fed.R. Crim.P. 32(c)(2)(D).

**7.** The very fact that the prosecutor urged the court to impose such large monetary penalties in and of itself undermines the defendants' present contention. When the argument was made by the prosecuting attorney, the court drew the most logical inference: that the government, having debarred itself from suggesting jail time, assumed it was unlikely that prison sentences would eventuate, and was attempting to galvanize the court toward a hefty financial punishment as an alternate procrustean bed commensurate with the character and severity of the offenses.

*Brown* is, on these facts, not controlling. Rather, the case at bar is more akin to *United States v. Avery*, 621 F.2d 214 (5th Cir.1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981), a case where the government was held not to have transgressed the terms of an agreement to make no recommendation at the time of sentencing. The Fifth Circuit, under a plea agreement which appears, from the government's viewpoint, to have been considerably more constrictive than that entered into by these defendants, refused to construe a "no recommendation" promise "to obligate the government to withold [sic] the disclosure of pertinent information on the defendant's background and character from the sentencing judge." *Id.* at 216. *See also*, to like effect, *United States v. Dickson*, 712 F.2d 952, 954–55 (5th Cir. 1983); *Block, supra.*

A second case very much in point is *United States v. Diamond*, 706 F.2d 105 (2d Cir.1983) (per curiam). In *Diamond*, the plea agreement called upon the prosecution to refrain from "recommend[ing] any specific sentence to the sentencing judge," but left the government at liberty to inform the judge of "the nature and extent of [the defendant's] activities" and "all other information in its possession relevant to sentence." *Id.* at 106. The prosecutor presented the judge with a disputatious "sentencing memorandum" which portrayed the defendant in the blackest of terms (*e.g.*, Diamond "teamed up with others ... to commit an enormous fraud. Their lies cost innocent victims over $1,000,000 ... and tore deeply into the moral fabric of our society."). The Second Circuit found that this invective worked no abrogation of the plea agreement, as the statements were "relevant" to the sentencing decision and within the scope of the prosecutor's reservation. *Id.*

In the instant case, the prosecutor's acknowledgement that the government would refrain from taking a position as to what, if any, term of imprisonment should ensue was admittedly brief, indeed, perfunctory. But, once the government agrees to stand mute as to a particular aspect of a prospective sentence, what more can it legitimately say on the topic? Whatever "degree of advocacy," *Brown*, 500 F.2d at 377, might rightfully attach to a preagreed affirmative recommendation, there is no effective way to "advocate" an agreement to make no recommendation. And, having stated the government's position, the prosecuting attorney exhibited no "halfheartedness," *id.*, nor did he make any "equivocal comments" concerning immurement. *See United States v. Tursi*, 576 F.2d 396, 399 (1st Cir.1978). He did not attempt to do by indirection what he was barred from doing directly. The argument which he proffered was entirely appropriate in respect to the government's view on the question of fines and in respect to its duty to the court (expressly preserved by the contracts with these defendants) to supply "relevant information." Agreement at ¶ 9. More to the point, the oration was wholly consistent with the bargain which the parties had struck. Here, as in *Diamond*, "(t)he adverse information the prosecutor reserved the right to present inevitably carried with it an implied argument in favor of a significant sentence." 706 F.2d at 106. Given the plea agreements, the defendants should have expected as much.

█ "[P]lea bargaining, for better or worse, is an integral and indispensable part of our legal system." *Block*, 660 F.2d at 1092. When the prosecution accedes to a plea agreement, it enters into a solemn covenant with the accused. It is right and fair that the prosecution be held both to the letter and the spirit of the pact. Yet, the government does not, simply by making an agreement to stand mute as to a single facet of the possible sentence, forfeit all right to participate in the presentence investigation or abdicate all responsibility to the court to furnish relevant information. And, the government's position is strengthened measurably where (as here) it reserves the right to paint the total picture for the court.

█ In this case, the prosecution limited its options at the sentencing hearing, but it did not foreclose itself from all comment on all subjects. The United States had both

the right and the responsibility to limn the facts relevant to the underlying scheme, and to do so vigorously. Fundamental fairness demands that the defendants receive the benefit of their bargain; it does not require that the government be held to an overall vow of silence which it never undertook. The plea agreements, fairly read, did not reduce the United States to a role as a handmaiden of the defendants, nor so emasculate the government's prerogatives as to render the prosecutor for purposes of the sentencing hearing the most impotent of eunuchs.

The defendants' animus is misdirected. They pled guilty to crimes which this court regards as both predatory and reprehensible. The prosecution refrained, as it had covenanted to do, from directly or indirectly hoisting in the courtroom the black-and-white striped flag of prospective incarceration. The defendants' complaint, despite their disclaimers, is not with what was said by the government's attorney: it is with the judgment of this court. As the record of the sentencing hearing amply reflects, the court acted in this instance not *because* of what the prosecutor urged or hinted, but *despite* the absence of any recommendation or guidance from the Justice Department on this score.[8] And, if one probes deeper, the authentic source of the defendants' lamentations is their own scurrilous and illegal conduct. They are the authors of their own misfortune.

The record reveals no broken promises. The government did not transgress the plea agreements. The sentencing hearing was fair and aboveboard; the defendants received all of the process which was due. Their joint motion to vacate the sentence is, therefore, DENIED. The defendants, and each of them, as previously mandated, shall report and surrender on February 4, 1985 at the federal penal facility at Allenwood, Pennsylvania to begin service of their respective sentences.

*It is so ordered.*

---

**8.** The practice of the government agreeing to stand mute as part of a plea agreement has been frequently—and justifiably—excoriated. *E.g., Block,* 660 F.2d at 1092. The interests of the public are often disserved by such timorous-

ness. But, in the final analysis, the responsibility for the imposition of sentence rests where it should—squarely on the shoulders of the court—whether or not the district attorney is forthcoming.