STATE of Wisconsin, Plaintiff-Respondent,

v.

Joshua L. HOWLAND, Defendant-Appellant.

Court of Appeals

*No. 02–2083–CR. Submitted on briefs February 19, 2003.—Decided April 2, 2003.*

2003 WI App 104

(Also reported in 663 N.W.2d 340.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul G. LaZotte*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Alan Lee*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J. Joshua L. Howland appeals from an order denying his request for postconviction relief after his conviction of second-degree sexual assault of a child. Howland argues that after a plea agreement where the district attorney's office agreed to make no sentence recommendation, the district attorney's office's contact with the probation and parole office to complain about an agent's recommendation for probation instead of incarceration, which resulted in an amended presentence investigation report (PSI) recommending incarceration, constituted a material breach of the plea agreement. Howland further argues that because defense counsel failed to object to the State's effective breach of the plea agreement, he is entitled to resentencing before a new judge. We agree and therefore reverse the order of the circuit court denying Howland's motion for postconviction relief.

## FACTS

¶ 2. On July 3, 2001, Howland was charged with second-degree sexual assault of a child and misdemeanor bail jumping. On September 27, 2001, Howland pled no contest to the sexual assault charge. This plea

was entered pursuant to a plea agreement. In exchange for Howland's no contest plea, the State agreed to dismiss the bail jumping charge, pursue no additional charges based on the law enforcement referral in this case and make no specific sentence recommendation.

¶ 3. Sentencing was originally scheduled for November 1, 2001. The PSI recommended five to seven years' incarceration. However, Howland's defense counsel had no chance to review the PSI with Howland prior to that date and sentencing was rescheduled for November 13, 2001. During the November 13 hearing, the PSI's author, agent Tania Wilhelmi, indicated that the Division of Community Corrections might change the PSI's sentence recommendation based upon new information from a witness:

> I received a phone call from the witness' mother this morning with some additional information that I had not received when I did my research for the PSI. She's here today and I think that the department would possibly change the recommendation that was made in the PSI.

The State explained that a witness to the offense, V.H., was now contradicting her original statement to the police by claiming that the sexual intercourse between then eighteen-year-old Howland and the then fourteen-year-old victim was not forcible. The State objected "to any statement from the defense perspective . . . about consent or non-consent given the nature of the conviction here." The circuit court responded that the department had the right to change the sentence recommendation.

¶ 4. At the November 13, 2001 sentencing, the circuit court opined that the PSI's sentence recommendation had, in fact, changed:

283

Okay. This matter comes on before the Court for sentencing. Two things. First, based on the last hearing, there was an indication that a witness to the incident had changed her original statement, not the victim, concerning what did transpire.

The Department of Probation and Parole consequently did an amended presentence which substantially changed the recommendation in relation to this matter which went from a recommendation in the original presentence dated 10–26— No. They both have the same date on so that doesn't help. —but from the original recommendation of a term of incarceration of five to seven years with extended supervision now to a recommendation of a stayed sentence of five to seven years. This is based apparently on a statement given by the friend, I believe, of the victim . . . who was also present indicating that the assault as opposed to being non-consensual, although as a legal matter you can't have consent, being a forcible, shall I say, sexual assault to a non-forcible sexual assault, which I assume changed that recommendation.

¶ 5. Because of this change in recommendation, the circuit court wanted V.H. to explain under oath why she had now changed her account of events:

How I sentence a person is somewhat dependent on the nature of the facts of the case. I've got apparently a friend of the victim saying that the victim's [sic] made statements to her that the incident occurred without the threats of violence or force where she's saying no, etc., etc. The type of sentencing on that just like a burglary, if you have a burglary from a home versus a garage, is they're still burglaries but they're different burglaries.

I wasn't there. Even if we went to trial, it wouldn't solve the dilemma for the simple reason that there can't be consent as a matter of law. So the jurors could still

come back and find a guilty because it's just non-consent for a person who's not attained the age of 16. So I could have testimony throughout the trial consistent with whatever, still have a guilty verdict, it still doesn't answer my question. I think the only way I can approach this to some extent is having the third party subpoenaed to give testimony prior to sentencing concerning why the statements were given in one way and one in another way.

. . . .

But I can judge credibility . . . . I need to make a decision. I mean, if it's a forcible, there's a high probability of a long lengthy prison sentence. If it's not, then there's— then I can see why the presentence is recommending what they were. How do I solve that dilemma?

. . . .

I've got someone who's a friend of the victim now saying it didn't happen that way. It's not like one of the defendant's friends. That's where I'm having a problem.

. . . .

I want that . . . person here, though, Ms. Rusch. I want her subpoenaed. I want to see her under oath.

¶ 6. After hearing the circuit court's position, the State agreed to subpoena V.H. but also said, "I'd like to know how much experience the probation agent has had on top of it." Sentencing was again rescheduled, this time for December 10, 2001.

¶ 7. Sometime after this hearing, there was a Community Relations Advisory Board meeting at a Kenosha office of the Division of Community Corrections. After the meeting was over, Marco Tejeda, assistant regional chief for the division, was walking out of

285

the room and noticed Susan Karaskiewicz, Kenosha County Deputy District Attorney. Karaskiewicz indicated that her office had an issue with the PSI and that she would be in contact.

¶ 8. Brian Brown, a field supervisor for the Division of Community Corrections, was nearby and overheard the exchange between Karaskiewicz and Tejeda. Because Brown supervised Wilhelmi, the author of the PSI, and approved the PSI recommending probation, he knew immediately which PSI Karaskiewicz was referring to. Brown was left with the distinct impression that Karaskiewicz was upset with Wilhelmi's probation recommendation.

¶ 9. When the advisory board meeting was over, Brown, Tejeda and Wilhelmi met to discuss the Howland PSI. Tejeda wanted to know the specifics of the case because he was not familiar with them. Brown informed Tejeda of the facts of the case and Tejeda said "we have to be prepared to stand by, defend our recommendation." Brown indicated that both he and Wilhelmi were prepared to do so. Tejeda requested a copy of the PSI and was later provided one. After that meeting, neither Brown nor Wilhelmi had any more direct involvement in the PSI.

¶ 10. Later, while probation and parole agent Brenda Friedrichs was in the district attorney's office copying files for other cases, Kenosha County District Attorney Robert Jambois approached her. During their conversation, Jambois referred to Wilhelmi's decision to change the PSI's recommendation from immediate imprisonment to probation based upon an additional statement from a witness. According to Friedrichs, Jambois

> felt it wouldn't be appropriate to change a recommendation based on what one witness says when you don't

bother to talk to anybody else but only this one person and to change a recommendation based on what one person had to say and not even bothering to call the victim.

¶ 11. Tejeda subsequently asked Friedrichs to review the PSI and its attached criminal complaint. He also informed her that if she thought it was appropriate, she should contact the victim. Friedrichs decided to simply review the PSI and its attached criminal complaint but chose not to contact the victim; after doing so, the PSI no longer recommended probation. Instead, the PSI recommended immediate incarceration for five to seven years. Tejeda never asked Friedrichs what she did in conducting her review.

¶ 12. After the encounter at the advisory board meeting, Karaskiewicz did call Tejeda. In a conference call initiated by Karaskiewicz and involving Tejeda, Assistant District Attorney Shelly Rusch and Jambois, Tejeda stated that he had already assigned Friedrichs to review the PSI; Tejeda later testified that he normally does not receive conference calls from the district attorney's office about a PSI.

¶ 13. On December 5, 2001, the district attorney's office wrote a letter to the court, in anticipation of Howland's December 10, 2001 sentencing hearing, addressing the change in the PSI recommendation based upon the change in testimony of witness V.H. This letter stated, in relevant part:

> On November 13, 2001, I filed [V.H.]'s original two-page statement along with [the victim]'s six-page statement, both dated June 29, 2001. Although Ms. Wilhelmi never re-contacted [the victim] or her parents after changing her recommendation, [the victim] has maintained that the defendant's sexual acts were aggressive and without any consent on her part. To better resolve this issue

and, as the court ordered, I have issued subpoenas for [V.H.] and [the victim] for December 10, 2001.

I am also in receipt of additional information, which may shed light on the developments as they pertain to [V.H.] While [V.H.] attended the first sentencing hearing in this case, she was notably absent on November 13, 2001, when the second sentencing hearing was to occur. I later learned that [V.H.] was in the courthouse at that time, but was attending the sentencing hearing of her brother-in-law, [J.A.] . . . . Ironically, [J.A.'s] and Mr. Howland's cases were scheduled for sentencing at precisely the same times. [J.A.] is married to [V.H.]'s sister, [V.A.], and was sentenced by Judge Warren for acts of extreme domestic violence against [V.H.]'s sister . . . . *[**V.H.**] was an eyewitness* to the violence against her sister . . . on July 15, 2001 and [J.A.] was charged originally with more than 50 years of prison exposure . . . . In spite of the facts of that case, [V.A.] wrote several letters to Judge Warren in **support** of [J.A.] and his case was resolved with one Class "E" felony and two misdemeanors. [V.H.] wrote a letter in support of [J.A.] as well . . . .

I next checked with Lt. Larry Apker of the Kenosha Sheriff's Department to see whether [J.A.] and Mr. Howland shared jail space between their fairly contemporaneous arrests and sentencing hearings (between July and November). In fact they were housed together over a twenty-day period in July. What is ironic is the fact that both Howland and [J.A.] committed acts of personal violence in the presence of the same, sole witness to their acts: [V.H.] . . . .

I spoke with [the victim] again, asking her about the nature of her relationship with [V.H.] and although the complaint may suggest that these two girls were friends, in fact they had just met for the first time within days of the sexual assault and [the victim] has not associated with [V.H.] since the assault.

288

Finally, I participated in a conference telephone call with Marco Tejeda who is an Assistant Regional Chief at the Department of Corrections. He relayed that Tanya Wilhelmi is a fairly new employee at the Department of Corrections and her supervisor, Brian Brown, is also fairly new. The Department's Sex Offender group reviewed the first PSI. This group consists of agents and supervisors who have specialized training in the supervision of sex offenders. This group did not review the second PSI. I believe that Mr. Tejeda intends to write a letter to the court explaining this anomaly . . . .

¶ 14. On December 10, 2001, Howland appeared for and was sentenced. The circuit court addressed the previous sentencing adjournment and the PSI's second addendum prepared by Friedrichs.

THE COURT: Sentencing in this matter had been adjourned the other day based on an amended presentence which had come in concerning a third party's account which has changed as to the sequence of events although the elements would not change. The Court set the matter over so I could hear testimony preferably of the third party whom apparently was a witness and who had changed her version of what had occurred so I could ask her questions.

In the interim, since that last court date, the Court had received on December 7 an addendum to the presentence from the department reversing their position as to their recommendation which now basically corresponds to the original recommendation and, secondly, the Court had received a letter dated December 5, received December 5 from Ms. Rusch with various attachments and other documents.

. . . .

That supplemental, though, is two pages, just basically as to why they had gone back to the original position.

¶ 15. The circuit court then asked defense counsel if he had received a copy of the State's December 5, 2001 letter to the court. Defense counsel said, "Yes, I have, and I'm really unhappy with this letter." He continued, "I think it's an attempt out of court to discredit the witness here that the Court wanted to talk with and I just am very, very unhappy with it." While defense counsel protested the final PSI's recommendation and the manner in which the recommendation arrived, defense counsel did not specifically object that the State had effectively breached the plea agreement and did not argue that the State's actions after the second adjourned sentencing hearing effectively amounted to lobbying the Division of Community Corrections to change the PSI's sentence recommendation.

¶ 16. The circuit court imposed a twenty-year bifurcated sentence, consisting of nine years' confinement and eleven years' extended supervision.

¶ 17. On May 20, 2002, Howland filed a motion for postconviction relief. Howland requested resentencing, arguing that the State breached the plea agreement by contacting the Division of Community Corrections between the second adjourned sentencing hearing and the final sentencing. Howland argued that because defense counsel failed to make that objection at the final sentencing hearing, he was denied his right to effective assistance of counsel.

¶ 18. Two evidentiary hearings were held on this motion, the first on June 21, 2002, and the second on July 22, 2002. The circuit court found "there's no question that the District Attorney's Office . . . did have conversations with representatives of the Department of Probation and Parole" and after those conversations, the PSI again recommended immediate confinement in state prison for five to seven years. However, the circuit

court held that this contact did not constitute a breach of the plea agreement and therefore prior defense counsel was not ineffective for failing to allege a breach.

¶ 19. On July 25, 2002, the circuit court entered a written order denying the postconviction motion. Howland appeals.

## DISCUSSION

¶ 20. Howland argues that because trial defense counsel failed to object to the State's breach of the plea agreement, trial defense counsel was ineffective and he is thus entitled to resentencing before a new judge. However, this assumes that the State's conduct does constitute a breach of the plea agreement, which the State denies. The State argues there was no breach and does not address the ineffective assistance of counsel issue.

■■

¶ 21. Howland has a Sixth Amendment right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *State v. Eckert*, 203 Wis. 2d 497, 506, 553 N.W.2d 539 (Ct. App. 1996). In order to prove that he has not received effective assistance of counsel, Howland must demonstrate two things: (1) that his lawyer's performance was deficient; and (2) that this deficient performance prejudiced his defense. *See Eckert*, 203 Wis. 2d at 506.

¶ 22. We have held that a postconviction *Machner*[1] hearing is a prerequisite to a claim of ineffective assistance of counsel in order to preserve the testimony of trial defense counsel. *State v. Curtis*, 218 Wis. 2d 550,

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

554, 582 N.W.2d 409 (Ct. App. 1998). Here, however, during the first postconviction hearing, the circuit court ruled that there was no reason to have trial defense counsel testify before the circuit court decided whether a breach of the plea agreement had occurred. We agree. If there was no breach of the plea agreement, then trial defense counsel would not have been ineffective for failing to object. *See State v. Wheat*, 2002 WI App 153, ¶ 14, 256 Wis. 2d 270, 647 N.W.2d 441, *review denied,* 2002 WI 111, 256 Wis. 2d 65, 650 N.W.2d 841 (Wis. July 26, 2002) (No. 01–2224–CR) (failure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit).

¶ 23. However, the circuit court also concluded that trial defense counsel's testimony was unnecessary because if there was a breach of the plea agreement, resentencing was the automatic remedy. This conclusion assumes that prejudice automatically flows from any breach of the plea agreement, regardless of trial defense counsel's reasons for the failure to object. While we do not agree with this leap in logic, neither party objected to the circuit court's directive regarding the hearing's procedural progress. Furthermore, it does not appear that either party requested trial defense counsel's testimony after the circuit court determined that the State had not breached the plea agreement. In addition, in its brief, the State does not address the ineffective assistance of counsel claim but limits its argument to the question of a breach. Thus, we will treat this case as if trial defense counsel had objected and the question of whether or not the State's actions constitute a breach of the plea agreement is the only question before us.

¶ 24. The terms of a plea agreement and the historical facts of the State's conduct that allegedly constitute a breach of a plea agreement are questions of fact. *State v. Williams*, 2002 WI 1, ¶ 5, 249 Wis. 2d 492, 637 N.W.2d 733. We review the circuit court's findings of fact under the clearly erroneous standard of review. *Id.* However, whether the State's conduct constitutes a breach of the plea agreement and whether the breach is material and substantial are questions of law. *Id.* We determine questions of law independently of the circuit court. *Id.*

¶ 25. An accused has a constitutional right to the enforcement of a negotiated plea agreement. *Id.* at ¶ 37. Consequently, once an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain. *Id.* A prosecutor who does not present the negotiated sentencing recommendation to the circuit court breaches the plea agreement. *Id.* at ¶ 38.

¶ 26. An actionable breach must not be merely a technical breach; it must be a material and substantial breach. *Id.* When the breach is material and substantial, an accused may be entitled to resentencing. *Id.* A material and substantial breach is a violation of the terms of the agreement that defeats the benefit for which the accused bargained. *Id.* "End runs" around a plea agreement are prohibited. *Id.* at ¶ 42. "The State may not accomplish by indirect means what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended." *Id.* A prosecutor may not

"convey a message to the trial court that a defendant's actions warrant a more severe sentence than that recommended." *State v. Ferguson*, 166 Wis. 2d 317, 322, 479 N.W.2d 241 (Ct. App. 1991).

¶ 27. The determination of law whether a breach occurred and whether the breach was substantial and material requires a careful examination of the facts. *Williams*, 2002 WI 1 at ¶ 53.

¶ 28. Here, pursuant to the terms of the plea agreement, the State agreed to make no sentence recommendation. The original PSI recommended five to seven years' incarceration. However, at the rescheduled sentencing hearing on November 13, 2001, the PSI author indicated that a witness to the crime had additional information relevant to the sentence recommendation. After talking to this witness, the author amended her report and changed the recommendation to a stayed sentence and probation.

¶ 29. On no less than three occasions (Karaskiewicz with Tejeda at the Community Relations Advisory Board meeting, Jambois with Friedrichs at the district attorney's office and Karaskiewicz, Jambois and Rusch in a conference call with Tejeda), the State contacted the Division of Community Corrections to express its displeasure with the agent's recommendation, even going so far as to say that the recommendation, based upon an additional witness statement without recontacting the victim, was "inappropriate." The district attorney's December 5, 2001 letter to the circuit court expressed as much. The PSI was then amended for a second time, changing the recommendation back to five to seven years' incarceration; however, this amendment was also done without the authoring agent recontacting the victim, the district attorney's criticism with the first amended report.

¶ 30. We agree with the State that we must honor the circuit court's finding that the State did not seek to achieve any change in the PSI but was merely trying to correct factual error and raise its concerns regarding the Division of Community Corrections' methodology and that no one ever explicitly asked the Division of Community Corrections to change its recommendation.

¶ 31. But again, whether this conduct constitutes a breach of the plea agreement is a question of law, *id.* at ¶ 5, and the State's conduct need not be based on bad motive or intent to violate a plea agreement. *Santobello v. New York*, 404 U.S. 257, 262–63 (1971). The inescapable conclusion to be drawn from the facts is that the final PSI recommendation was the product of the district attorney's intervention. Thus the State was able to procure a sentence recommendation through the Division of Community Corrections by challenging the methods it used. This constituted an "end run" around the plea agreement. "[J]ust because a prosecutor says there was no breach does not make it so." *Williams,* 2002 WI 1 at ¶ 52. If the prosecutor agreed to make no sentence recommendation, action by the prosecutor via influence with the presentence investigator would have rendered this no-sentence recommendation bargain meaningless. That the State did not intend to breach the agreement or that a breach was inadvertent "does not lessen its impact." *Id.*

¶ 32. We must also note that the inappropriate nature of the contact between the district attorney's office and the Division of Community Corrections borders on ex parte communications. Our supreme court has acknowledged the importance of the PSI to the sentencing process. *State v. Suchocki*, 208 Wis. 2d 509, 518, 561 N.W.2d 332 (Ct. App. 1997). The securing of a

PSI is an integral part of the sentencing function and is solely within the judicial function. *Young v. State*, 49 Wis. 2d 361, 368, 182 N.W.2d 262 (1971). The purpose of a PSI is to assist the judge in selecting the appropriate sentence for the individual defendant. *State v. Knapp*, 111 Wis. 2d 380, 384, 330 N.W.2d 242 (Ct. App. 1983). The Division of Community Corrections does not function as an agent of either the State or the defense in fulfilling its role but as an agent of the trial court in gathering information relating to a specific defendant. *Suchocki*, 208 Wis. 2d at 518.

¶ 33. The preparer of the PSI is to be a neutral and independent participant in this sentencing process. *State v. McQuay*, 154 Wis. 2d 116, 131, 452 N.W.2d 377 (1990). Presentence reports are designed to gather information concerning a defendant's personality, social circumstances and general pattern of behavior so the judge can make an informed sentencing decision. *Knapp*, 111 Wis. 2d at 386. In Wisconsin, the entire sentencing process is to be a search for truth and an evaluation of alternatives and any advance understanding between the prosecutor and defendant must not involve any persons conducting a presentence investigation for the court. *Farrar v. State*, 52 Wis. 2d 651, 657, 191 N.W.2d 214 (1971).

¶ 34. It is important that a defendant and the probation officer have a relationship which encourages an accurate appraisal of a defendant's social and criminal history and a recommendation for beneficial rehabilitative treatment which will best modify a defendant's behavior to conform to society's requirements. *Knapp*, 111 Wis. 2d at 387. The purpose of the PSI is to do more than simply compile the factual background regarding a specific defendant. *Suchocki*,

208 Wis. 2d at 518. The report contains a variety of areas where the PSI writer is able to make discretionary determinations. *Id.* For example, the report has a section involving the "agent's impressions." *Id.* This portion of the PSI involves the writer's subjective feelings regarding the defendant to be sentenced. *Id.* at 518–19.

¶ 35. It is not the mere existence of contact between the prosecuting attorney and the PSI writer that is at issue. *Id.* at 519. It is whether the PSI writer may be subconsciously influenced by this relationship in forming impressions regarding the defendant and in making recommendations to the court. *Id.*

¶ 36. The integrity of the sentencing process demands that the report be accurate, reliable and, above all, objective. *Id.* at 518. A defendant's cooperation and openness depend upon the objectivity of this report; a cooperative and open relationship would be impossible if the defendant perceives the probation officer to be a mere puppet of the district attorney's office. Because of the requirement that the report be objective, it is of vital importance that the author of the report be neutral and independent from either the prosecution or the defense. *Id.*

¶ 37. We conclude that the district attorney's contacts with the Department of Probation and Parole, complaining about the PSI author's sentence recommendation, when the plea agreement required the State to make no sentence recommendation, resulted in a material and substantial breach of the plea agreement. Consequently, we reverse the order denying Howland's postconviction motion and we remand the cause to the circuit court for resentencing.

¶ 38. We further conclude that because of the nature of the past proceedings, Howland's resentencing would be best conducted by a new circuit court judge.[2] Furthermore, to avoid any further taint in this case, we also conclude that a new presentence investigation should be conducted and a new report completed by a department from another county.

## CONCLUSION

¶ 39. We agree with Howland that the district attorney's contact with the Division of Community Corrections to complain about a PSI sentence recommendation, which resulted in a change in recommendation from probation to incarceration, breached the plea agreement in which the district attorney's office agreed to make no sentence recommendation. Howland is entitled to resentencing before a new judge after a new PSI is completed by a different county. We therefore reverse the order of the circuit court denying Howland's motion for postconviction relief and remand this matter for resentencing after the completion of a new PSI.

*By the Court.*—Order reversed and cause remanded with directions.

¶ 40. BROWN, J. (*concurring*). I believe that, as an officer of the court, the district attorney not only has the right, but also the responsibility, to protest any perceived departures from normal practice when PSI's are being prepared if those changes are detrimental to victims' rights. A change in a PSI recommendation, prompted by a hearsay telephone call that disputes a

---

[2] We note that Judge Bruce E. Schroeder is also ineligible to conduct the resentencing. Howland filed a request to substitute Judge Schroeder in the early stages of this case.

victim's account, without giving the victim an opportunity to respond, warrants a protest by the district attorney. The district attorney has a duty to protect victims throughout the criminal process, including the PSI stage. To the extent that the majority opinion may be saying otherwise, I respectfully disagree.[1]

¶ 41. Nor do I believe that the actions of the district attorney's office resulted in a de facto "end around" the district attorney's plea agreement to keep silent regarding any sentencing recommendation. To the extent that the majority opinion says otherwise, I disagree. I do not believe that the district attorney intentionally or functionally breached the plea bargain.

¶ 42. The reason why I concur rather than dissent is because the avenue chosen by the district attorney's office to register its concerns about PSI procedure was to commence and carry out a series of presentence, ex parte communications with the Division of Community Corrections about the method employed in *this* case, all of which occurred before the final sentencing hearing. I think this was improper. The correct avenue would have been to bring its concerns to the attention of the court, with *notice to opposing counsel*, and ask the court to deal with these concerns. The emphasis would not have been on any change in recommendation, but

---

[1] I point out that WIS. STAT. § 950.04(1v)(p) (2001–02) provides that, as part of a victim's basic bill of rights, the presentence writer must make a reasonable attempt to contact the victim. Viewing § 950.04 as a whole, I cannot conceive of any other interpretation than that this section includes being notified if some person tells the PSI writer that the victim has retracted a statement originally made. Failure to do so is unreasonable. As an officer of the court and as one with a special duty toward victims, the district attorney has the right and obligation to protest.

upon the right of the victim to reply to the hearsay information provided by some other person.

¶ 43. Such as it is, the ex parte communications ruined the independent nature of this PSI. As the majority points out, the PSI writer may have been subconsciously influenced by the relationship between the Division of Community Corrections and the district attorney's office in making a change in the recommendation to the court. For this reason, the objective nature of the PSI was in danger of being compromised. I would reverse in the interests of justice, not because of any perceived breach of the plea bargain. I agree with the instructions on remand.