STATE of Wisconsin, Plaintiff-Respondent,

v.

Rudolph L. JACKSON, Defendant-Appellant.†

Court of Appeals

*No. 03–1805–CR. Submitted on briefs March 2, 2004.—Decided May 18, 2004.*

2004 WI App 132

(Also reported in 685 N.W.2d 839.)

† Petition to review denied 8-2-04.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Andrea Taylor Cornwall*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Rudolph L. Jackson appeals the judgment convicting him of one count of felony patient neglect, contrary to WIS. STAT. §§ 940.295(3)(a)1. and (b)1r (2001–02).[1] He also appeals from the order denying his postconviction motion. Jackson argues that the assistant attorney general prosecuting the case breached the plea agreement in his sentencing remarks.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

We conclude that the prosecutor did not breach the terms of the plea agreement and affirm.

## I. BACKGROUND.

¶ 2. In January 2002, a Glendale police officer was dispatched to a local hospital after an emergency room nurse contacted the police department. The nurse told the officer that she examined an elderly Alzheimer's patient, K.K., with a broken arm and a fractured rib. She advised the officer that because no one at the nursing home facility where K.K. lived could explain how or when the injuries occurred, she called the police.

¶ 3. The officer then interviewed employees of the nursing home where K.K. lived. Several employees implicated Jackson. One employee, Angela Brown, recounted that the night before K.K. was hospitalized, she was in the kitchen talking to Jackson when K.K. wandered in. Jackson said, "He needs to go to bed now," and escorted K.K. to his room and closed the door. Brown told the police that she then heard K.K. yelling and the sounds of an apparent scuffle ensued. When Jackson exited the room, he told Brown that he had done nothing to K.K. and that K.K. had fallen and bumped his head.

¶ 4. After initially denying that anything had happened to K.K. in his presence, Jackson later recanted and stated that while he was administering K.K.'s medications on January 7, 2002, K.K. fell to the floor, striking his back and buttocks. Jackson also admitted that he failed to notify anyone about K.K.'s injuries and did not make any notation in the charts, contrary to the facility's policy.

¶ 5. As a result of the officer's investigation, Jackson was charged with one count of felony patient

neglect. A plea negotiation was struck: Jackson agreed to plead guilty and the assistant attorney general agreed not to make a specific sentencing recommendation, but was free to argue what he believed were the mitigating and aggravating circumstances.

¶ 6. At sentencing, the assistant attorney general made a lengthy and compelling argument, but did not recommend a specific sentence. Following the prosecutor's statements, Jackson's attorney claimed that the prosecutor had breached the plea agreement. The trial court recessed the sentencing proceeding to research the issue. Upon reconvening, the trial court noted that the prosecutor had used "strong words," but determined that the plea agreement had not been breached, and proceeded to sentence Jackson. Jackson received a sentence of two years' imprisonment followed by two years' extended supervision. He now appeals.

## II. ANALYSIS.

¶ 7. *Santobello v. New York*, 404 U.S. 257 (1971), is the seminal case addressing the prosecutor's duties at sentencing after a plea agreement has been negotiated. If a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. The rationale for this rule can be found in *State v. Williams*, 2002 WI 1, 249 Wis. 2d 492, 637 N.W.2d 733:

> The principal rule of law applicable to the present case is that an accused has a constitutional right to the enforcement of a negotiated plea agreement. An agreement by the State to recommend a particular sentence may induce an accused to give up the constitutional

right to a jury trial. Consequently, once an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain.

*Id.*, ¶ 37 (footnotes omitted).

¶ 8. Not only is a prosecutor obliged to fulfill the bargain, but the prosecutor may not render a less than neutral recitation of the plea agreement. *See State v. Poole*, 131 Wis. 2d 359, 364, 394 N.W.2d 909 (Ct. App. 1986). In order to meet this obligation, *Santobello* proscribes not only explicit repudiations of plea agreements, but also "end-runs around them." *United States v. Voccola*, 600 F. Supp. 1534, 1537 (D.R.I. 1985). Thus, the State is prohibited from accomplishing indirectly "what it promised not to do directly, and it may not covertly convey to the trial court that a more severe sentence is warranted than that recommended." *See State v. Howland*, 2003 WI App 104, ¶ 26, 264 Wis. 2d 279, 663 N.W.2d 340 (citation omitted).

¶ 9. Whether the State's conduct violated the terms of the plea agreement is a question of law that we review *de novo*. *Williams*, 249 Wis. 2d 492, ¶ 2. "An actionable breach must not be merely a technical breach; it must be a material and substantial breach." *Id.*, ¶ 38 (footnote omitted). If a material and substantial breach occurred, the accused may be entitled to resentencing. *Howland*, 264 Wis. 2d 279, ¶ 26.

¶ 10. Jackson contends that the prosecutor breached the plea agreement. He argues that "[t]he [S]tate undercut its agreement to refrain from making a sentence recommendation and leave sentencing up to

the court, by remarks designed to influence the severity of the sentence the court imposed in this case."

¶ 11. At the guilty plea proceeding, the prosecutor recited to the trial court that "at the time of sentencing [he would] refrain from making an affirmative sentencing recommendation, rather [he] would leave sentencing to the wisdom and discretion of the Court, arguing both the mitigating and aggravating circumstances surrounding this occurrence." The prosecutor's argument at sentencing covers over twenty pages of the transcript. In his remarks, he explained the underlying events that led to the charge. He informed the court that although K.K.'s subsequent death could not be attributed to the injuries that formed the basis of the charge against Jackson, as the autopsy revealed that they were not a cause of death, little was known of the injury-causing incident except for Jackson's explanation. He highlighted Jackson's bad character, but did note that in mitigation, Jackson had accepted responsibility and pled guilty. He also expressed his outrage at the willingness of other nursing home facilities to write recommendations on Jackson's behalf despite the criminal charge and, as a result, he urged the court to take deterrence into consideration when sentencing Jackson. Finally, he noted the serious nature of the offense. None of those statements violated the plea agreement.

¶ 12. Jackson relies principally on *Williams* for support, but *Williams* is not dispositive. Williams was charged with two counts of failure to pay child support. 249 Wis. 2d 492, ¶ 24. In exchange for the State dismissing one count and recommending a sentence of three years' probation with sixty days in the county jail, Williams pled guilty to the other count. *Id.* The trial court ordered a presentence investigation, and the presentence investigation report recommended " 'a me-

dium term of imprisonment.' " *Id.*, ¶ 25. In his sentencing remarks, the prosecutor summarized the damaging statements made by the presentence author and by Williams's ex-wife, and also advised the trial court that Williams's ex-wife wanted him to go to prison. *Id.*, ¶ 26. In doing so, our supreme court determined that the prosecutor "stepped over the fine line between relaying information to the circuit court on the one hand and undercutting the plea agreement on the other hand." *Id.*, ¶ 46. In summarizing the situation, the supreme court cautioned

> that "what the prosecutor may not do is personalize the information, adopt the same negative impressions as [the author of the presentence report] and then remind the court that the [author] had recommended a harsher sentence than recommended. That is what happened here."

*Id.*, ¶ 48 (citation and footnote omitted; alteration in original).

¶ 13. Here, the prosecutor only promised not to recommend a specific sentence. No specific sentence was ever expressed. Moreover, the prosecutor also reserved the right to bring all favorable and unfavorable information to the court's attention. Unlike in *Williams*, the prosecutor did not step over the line.

¶ 14. Jackson contends that the prosecutor breached the plea negotiation as his statements constituted an "end-run" around the prosecutor's agreement not to recommend a specific sentence. He claims that the prosecutor's comments were designed to influence the severity of the sentence. A similar complaint was made in *State v. Ferguson,* 166 Wis. 2d 317, 479 N.W.2d 241 (Ct. App. 1991). There, the prosecutor agreed to

699

recommend imposed and stayed sentences, the length of which was to be determined by the trial court, followed by twenty years' probation. *Id.* at 319. The trial court declined to follow the State's recommendation and, instead, sentenced Ferguson to six years' imprisonment on one charge and stayed a ten-year prison sentence on the other, and placed Ferguson on probation for fifteen years. *Id.* at 320. Ferguson claimed that the prosecutor's comments "amounted to an 'explicit and outrageous character assault.' " *Id.* at 324. In concluding that the prosecutor's comments were appropriate, we observed: "At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot be 'immunized by a plea agreement between the defendant and the [S]tate.' " *Id.* at 324 (citation omitted). "A plea agreement which does not allow the sentencing court to be apprised of relevant information is void as against public policy." *Id.*

¶ 15. That is exactly what occurred here. The prosecutor wanted the trial court to know all of the relevant information concerning Jackson and to consider the impact of the sentence before it sentenced Jackson. The plea agreement permitted the prosecutor to supply this information. The fact that the prosecutor's comments were compelling and delivered by "strong words" did not transform the commentary into a plea bargain violation.

¶ 16. A second case that is certainly on point is *United States v. Diamond*, 706 F.2d 105 (2d Cir. 1983) (per curiam). Diamond was prosecuted for participating in an interstate conspiracy to defraud commodities investors. *Id.* at 105. The plea agreement required the prosecution to refrain from "recommend[ing] any specific sentence to the sentencing judge," but left the government at liberty to inform the judge of the "full

nature and extent of [the defendant's] activities" and "all other information in its possession relevant to sentence[,]" among other things. *Id.* at 106. What occurred next is best recalled in *Voccola.* The prosecutor "presented the judge with a disputatious 'sentencing memorandum' which portrayed the defendant in the blackest of terms. . . . The Second Circuit found that this invective worked no abrogation of the plea agreement, as the statements were 'relevant' to the sentencing decision and within the scope of the prosecutor's reservation." *Voccola,* 600 F. Supp. at 1539.

¶ 17. Here, the prosecutor was entitled to discuss not only Jackson's character, but also the health care community's response to Jackson's charge and the possibility that deterrence would cure the industry's apparent indifference. *See Harris v. State,* 75 Wis. 2d 513, 520, 250 N.W.2d 7 (1977) (deterrence is proper factor for consideration in sentencing). The prosecutor derived this impression of indifference because Jackson continued to get favorable letters of recommendation. Thus, the prosecutor believed that the health care industry had a casual attitude towards criminal charges being levied against nursing home employees. These comments were appropriate because they informed the trial court of the implications of its sentence for the entire community.

¶ 18. These statements are similar to the prosecutor's remarks in *United States v. Mata-Grullon,* 887 F.2d 23 (1st Cir. 1989). There, after entering into a plea negotiation in a drug case, the prosecutor commented at sentencing about the devastating effects the seized and "quite potent" heroin would have had on any unknowing users of the drug. *Id.* at 24. Mata-Grullon claimed the prosecutor breached the agreement by making those remarks. The sentencing court rejected

701

the claim that the prosecutor breached the plea agreement, reasoning that the prosecutor was obligated to bring all relevant facts to the judge's attention. *See id.* at 24–25.

¶ 19. Thus, in the instant case, the prosecutor did not do indirectly what he was barred from doing directly. The argument that he proffered was entirely appropriate with respect to the prosecutor's assessment of Jackson's character, the frailty of the victim, and the fact that he died. The prosecutor also commented on what he believed to be the ignoble response of the health care community and expressed the hope that the impact of the sentence would deter others similarly situated. These comments highlighted the mitigating and aggravating circumstances to the court. His opinion was wholly consistent with the bargain struck by the parties. As noted in *Diamond*, "[t]he adverse information the prosecutor reserved the right to present inevitably carried with it an implied argument in favor of a significant sentence." 706 F.2d at 107. Given the charge here, the gravity of the offense, the character of the accused, and the impact of such conduct on the welfare of a helpless segment of society, Jackson should have expected as much.

¶ 20. For the reasons stated, the trial courts judgment and order are affirmed.

*By the Court.*—Judgment and order affirmed.