COURT OF APPEALS
DECISION
DATED AND FILED

February 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2188-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF208

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

WILLIAM SCOTT LATTA,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Green County: FAUN MARIE PHILLIPSON, Judge. *Affirmed.*

Before Blanchard, Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. William Scott Latta appeals a judgment of conviction and an order denying his postconviction motion. In that motion, Latta argued that the circuit court erred in failing to hold a presentence "evidentiary hearing" on alleged inaccuracies in the Pre-Sentence Investigation report (PSI) prepared by the state Department of Corrections. In the alternative, Latta argued that his trial counsel was constitutionally ineffective in failing to request a presentence evidentiary hearing to resolve the alleged inaccuracies in the PSI and in failing to object at sentencing to the court's alleged reliance on these inaccuracies. As remedies, Latta requested a postconviction evidentiary hearing that he argued would lead to resentencing.

¶2     On appeal, Latta argues that the circuit court erred in failing to hold a postconviction evidentiary hearing regarding the alleged errors in the PSI or, in the alternative, a *Machner* hearing on his ineffective assistance of trial counsel claim.[1] We conclude that, because material portions of the record conclusively demonstrate that he is not entitled to relief, he was not entitled to a postconviction hearing under either claim. Accordingly, we affirm.

## BACKGROUND

¶3     In 2020, Latta was charged with multiple counts of sexually assaulting A.F.B., his step-granddaughter who was then twelve years old, over approximately eighteen months. Latta's charges included three counts of first-degree sexual assault for sexual contact with a child under age thirteen; attempted

---

[1] "A *Machner* hearing is '[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case.'" *State v. Domke*, 2011 WI 95, ¶20 n.5, 337 Wis. 2d 268, 805 N.W.2d 364 (citation omitted); *see also State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

first-degree sexual assault for sexual contact with a child under age thirteen; two counts of exposing a child to harmful material; and victim intimidation for dissuading her from reporting the crimes.[2] Latta was also charged with two counts of repeated acts of physical abuse, causing bodily harm to A.F.B. and her then seventeen-year-old sister R.G.B. In a separate criminal case, Latta was charged with two counts of felony bail jumping after he allegedly contacted two minor juveniles in violation of his bond condition that prohibited him from having intentional contact with minors.

¶4 A.F.B.'s allegations included multiple accounts of Latta grabbing her breasts, vagina, and butt over her clothes; forcing her to lie on top of him while he touched her breasts under her clothes; hugging her inappropriately; giving her two vibrators; asking her to take nude pictures of herself and send them to him; exposing her to pornography; physically abusing her, and instructing her to remain silent about his conduct. R.G.B. reported that, among other things, Latta physically abused her.

¶5 In December 2021, Latta pled no contest to, and was found guilty of, one count of first-degree sexual assault for sexual contact with a child under the age of 13. In exchange for his plea, the prosecution agreed to dismiss and read in the eight remaining charges and the two felony bail jumping charges in Latta's other criminal case. At the plea hearing, the parties summarized a joint sentencing recommendation, which included that the circuit court withhold sentence and

---

[2] Pursuant to WIS. STAT. RULE 809.86(4) (2021-22), and consistent with the parties' briefing to this court, we refer to the victims by the initials used in the criminal complaint.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

place Latta on ten years of probation with one year of conditional jail time. The court explicitly told Latta during the plea hearing—and Latta acknowledged in a signed plea questionnaire—that the court was not required to accept the parties' joint sentencing recommendation and could impose the maximum penalty of up to sixty years of imprisonment.

¶6    The parties recommended, and the circuit court ordered, a PSI, which was prepared by a Department of Corrections agent ("the agent") and submitted to the court one month before the sentencing hearing. In a section with the heading "Defendant's Version," the PSI states, in relevant part:

> The defendant claims he did not commit this offense. He states that he only plead no contest because nobody would believe him due to the victim's age. Additionally, he does state in communication with his step-grandson's ex-girlfriend, that the victims are lying and making the allegations up.… The defendant completely denies that anything criminal occurred and maintains the idea that he did nothing wrong.

In another section with the heading "Agent Impressions," the PSI states that Latta "refuses to take responsibility for his actions and continually claims the victims are lying. In addition to taking no responsibility for his actions, the defendant also shows no remorse whatsoever." The PSI recommended that, to protect the victims and the community, Latta be imprisoned for twenty years, with sixteen years of initial confinement and four years of extended supervision.

¶7    Two weeks before Latta's scheduled sentencing hearing, Latta moved the circuit court for an adjournment on the grounds that the PSI "contains a number of factual inaccuracies that [Latta] wishes to address before the sentencing hearing." Although Latta had spoken with his counsel, he had not yet had a chance to meet with counsel in person. Latta did not identify a specific factual

4

inaccuracy in the PSI. The prosecution objected to Latta's adjournment motion because it failed to detail what corrections were needed and why they could not be timely addressed before or at the sentencing hearing. The court denied the motion and instead ordered Latta to file a written description of the requested corrections or clarifications to the PSI. The court stated that it would address any PSI disputes at the sentencing hearing.

¶8      Latta subsequently filed a 43-page submission, including a letter that was essentially a sentencing memorandum and a psychosexual forensic assessment of Latta performed by defense expert Dr. Sharon Kelley, a clinical psychologist.[3] In this memorandum, Latta primarily focused on supporting the parties' joint sentencing recommendation and discrediting the sentencing recommendation in the PSI. He only briefly addressed alleged factual inaccuracies in the PSI, including statements in the PSI under the "Agent Impressions" section that he "refuses to take responsibility for his actions" and "shows no remorse." According to Latta's submission, these impressions were "based on information contained earlier-on in the PS[I] which misstates [Latta's] actual statements—none of which are attributed to him by the use of quotes." However, Latta identified only one statement in the PSI as being erroneously attributed to him, namely, the statement that Latta "does state in communication with his step-grandson's ex-girlfriend that the victims are lying and making this up." Latta alleged that this was a statement made by a third party and incorrectly attributed to him.

---

[3] Although a sentencing memorandum is similar in content to a court-ordered PSI, it is ordinarily prepared by a person retained by the defendant who advocates for the defendant's sentencing position. *State v. Greve*, 2004 WI 69, ¶12, 272 Wis. 2d 444, 681 N.W.2d 479.

¶9    The agent appeared virtually at the February 2022 sentencing hearing. The parties questioned the agent about statements she attributed to Latta in the PSI. The agent said that she had two phone conversations with Latta and that Latta had provided written answers to a questionnaire. The agent acknowledged that Latta chose not to fill out the "Defendant's Version" section on the PSI questionnaire. During one of their phone conversations, the agent said that Latta declined to provide his "entire version" of his criminal conduct. As a result, she completed this section of the PSI by "paraphras[ing]" the "snip-its" of information that Latta relayed to her during one of these phone conversations, including his statements that he denied any criminal conduct and that he pled no contest only because he thought nobody would believe he was innocent due to the victim's age. The agent said that she had also interviewed Latta's wife while preparing the PSI. The agent acknowledged that she recorded the contents of her conversations with Latta and with his wife by writing notes on undated "Post-it Notes," but said that she did not mix up these conversations and misattribute statements made by Latta's wife to Latta.

¶10    The only evidence or discussion regarding alleged inaccuracies in the PSI during the sentencing hearing consisted of the agent's statements, just summarized. Latta did not attempt to rebut these statements through other witnesses or evidence, nor did he request that the circuit court strike or not consider any portion of the PSI.

¶11    Following the parties' questioning of the agent, A.F.B. addressed the circuit court. She said that she and her sister "grew up thinking [that] everything he has done was just normal," and that as children they were seeking "a father figure" and "he took advantage of that." A.F.B. said that Latta's conduct scared

6

her and turned her life "upside down." She concluded her remarks by saying "[i]n my opinion this man is just a danger to your kids."

¶12 In his allocution, Latta said that he accepted responsibility for his actions and admitted that he committed the conduct described in the criminal complaint. He said that his conduct would make "any teenage girl uncomfortable," that he did not respect "boundaries," and that he hurt the victims with his actions. He apologized to his family and said that he was "ready to start counseling."

¶13 The circuit court did not adopt the entirety of the parties' joint sentencing recommendation nor the sentencing recommendation in the PSI. Instead, the court imposed fourteen years of imprisonment, consisting of four years of initial confinement and ten years of extended supervision. In imposing this sentence, the court primarily relied upon the gravity of the offense and the need to protect the public. The court's sentencing decision is described in more detail later in this opinion.

¶14 After sentencing, Latta filed a postconviction motion requesting an evidentiary hearing and resentencing. First, Latta contended that the circuit court erred by failing to hold what he described as a "required" presentence evidentiary hearing concerning the accuracy of certain statements in the PSI and by failing to make express findings about these statements prior to issuing its sentence. In an affidavit attached to his postconviction motion, Latta averred that he had not made some of the statements to the agent that she attributed to him in the PSI, as discussed in more detail below. Latta asked the court to correct the error "by holding the required hearing [postconviction]," and then by resentencing him based on accurate information.

¶15    In the alternative, Latta argued that he is entitled to resentencing because his trial counsel was ineffective for failing to request a presentence evidentiary hearing on the alleged inaccuracies in the PSI, not moving to strike or requesting other remedies regarding the alleged inaccuracies, and not objecting to the circuit court's "reliance" on the inaccuracies at sentencing. Latta requested a *Machner* hearing on these claims.

¶16    In a written order, the circuit court denied Latta's postconviction motion without holding a hearing. The court stated that Latta's sentence was based on the required sentencing factors under *State v. Gallion*, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, especially the seriousness of the offense and the need to protect the public. The court acknowledged that its sentencing decision referenced the statement in the PSI that Latta refused to take responsibility for his actions, but the court explained that it balanced this information with Latta's sentencing statement that he accepted responsibility for his criminal conduct. The court further stated that, in any case, Latta's acceptance or non-acceptance of responsibility was not a deciding nor critical factor at sentencing.

¶17    The circuit court also rejected Latta's ineffective assistance of trial counsel claim, reasoning that counsel had performed effectively in most aspects of his representation. The court continued that, even if Latta's trial counsel was deficient in failing to seek an evidentiary hearing regarding the alleged inaccuracies in the PSI, that deficiency did not prejudice Latta because the court "ultimately sentenced Mr. Latta in accordance with what the Court believes to be appropriate." Latta appeals.

**DISCUSSION**

¶18    On appeal, Latta repeatedly asserts that he is not asking this court to determine that he is entitled to resentencing and that he is appealing only the circuit court's denial of his postconviction motion without holding an evidentiary hearing.[4]  Latta argues that he is entitled to a postconviction evidentiary hearing on the alleged inaccuracies in the PSI because he has a due process right to be sentenced on accurate information.  In the alternative, Latta argues that the circuit court erred in denying his postconviction ineffective assistance of trial counsel claim without holding a *Machner* hearing because trial counsel should have demanded that the court hold a presentence evidentiary hearing on the disputed statements in the PSI or requested other relief regarding these inaccuracies before sentencing.  We address both arguments in turn.

## I.  Standard of Review.

¶19    A circuit court must hold a hearing on a postconviction motion, including a *Machner* hearing, if the defendant's motion establishes sufficient material and non-conclusory facts, that, if true, would entitle the defendant to relief, and the record does not conclusively establish otherwise.  *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608.  "Conversely, '[i]f the motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing.'"  *Id.* (citation omitted).

---

[4] Because Latta's sole request on appeal is for this court to order a postconviction hearing, we will not consider Latta's resentencing request raised in his postconviction motion.

¶20 If the record conclusively demonstrates that the defendant is not entitled to relief, it is within the circuit court's discretion to conduct an evidentiary hearing on a postconviction motion. *State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432. Whether the record conclusively demonstrates that the defendant is entitled to no relief is an issue of law we review independently. *Id.*, ¶27.

## II. The Circuit Court Did Not Err in Denying Latta's Motion on the Accuracy of the PSI Without a Postconviction Evidentiary Hearing.

¶21 On appeal, Latta argues that the circuit court erroneously denied his postconviction motion without an evidentiary hearing regarding certain statements attributed to him in the PSI and the agent's assertions that he refused to take responsibility for his conduct. Specifically, Latta's postconviction motion alleged that the following portions of the "Defendant's Version" section of the PSI are false: "[Latta] claims that he did not commit this offense"; "[Latta] states that he only plead no contest because nobody would believe him due to the victim's age"; "[Latta] completely denies that anything criminal occurred and maintains the idea that he did nothing wrong"; and "[Latta] does state in communication with his step grandson's ex-girlfriend, that the victims are lying and making the allegations up." The motion does not argue that Latta never made such statements, but instead argues that he did not make these statements to the agent or to any third parties following his plea.

¶22 As best as we can tell from Latta's briefing on appeal, he contends that, because the circuit court allegedly failed in its duty to rule on whether the PSI was accurate and to assess the agent's credibility, he is entitled to a postconviction evidentiary hearing on the alleged inaccuracies in the PSI. We disagree. As discussed in more detail below, we conclude that the material parts of the record

10

conclusively show that Latta is not entitled to relief. Therefore, it was not error for the court to deny Latta's postconviction motion without holding a hearing regarding the alleged inaccuracies.

### A. Latta Is Not Entitled to a Postconviction Evidentiary Hearing Under *Melton*.

¶23   After a felony conviction but before sentencing, a circuit court has the discretion to order that the Department of Corrections prepare a PSI addressing aspects of the case relevant to sentencing. *See State v. Melton*, 2013 WI 65, ¶26, 349 Wis. 2d 48, 834 N.W.2d 345 (citing WIS. STAT. § 972.15(1)). "The primary purpose of a PSI is 'to provide the sentencing court with accurate and relevant information upon which to base its sentencing decision.'" *Id.* (citation omitted). To protect the integrity of the sentencing process and to ensure that the sentencing court bases its decision on reliable information, the court is required to "disclose the contents of the [PSI] to the defendant's attorney and to the district attorney prior to sentencing."[5]  Sec. 972.15(2).  Because a defendant has a constitutional due process right to be sentenced on accurate information, the defendant has the "right to challenge any statement in the PSI he or she believes is inaccurate or incomplete" and the defendant must be given the opportunity to refute allegedly inaccurate information. *State v. Greve*, 2004 WI 69, ¶11, 272 Wis. 2d 444, 681 N.W.2d 479; *State v. Perez*, 170 Wis. 2d 130, 141, 487 N.W.2d 630 (Ct. App. 1992).

¶24   Latta's postconviction motion asserted that the alleged inaccuracies in the PSI identified in his sentencing memorandum "made it clear" that he was

---

[5] If a defendant is not represented, the PSI shall be disclosed to the defendant. *See* WIS. STAT. § 972.15(2).

11

challenging the accuracy of the statements attributed to him in the PSI and the agent's conclusion that he refused to take responsibility for his criminal conduct. The motion contended that Latta's sentencing memorandum "triggered a duty of the Court to 'rule [whether] the information [was] accurate' and to assess [the agent's] credibility."[6]   Because the circuit court failed to perform this alleged required function, Latta argued, he is entitled to such a hearing postconviction.  In support of his position, Latta relied on a portion of our supreme court's decision in *Melton*, which states:  "In the event the defendant wishes to contest any of the factual matters set forth in a PSI, the defendant is entitled to an evidentiary hearing where evidence regarding the issue in controversy may be presented by the State or the defendant."  *Melton*, 349 Wis. 2d 48, ¶65 (citation omitted).

¶25    Contrary to Latta's argument, *Melton* does not control our analysis of whether a postconviction motion necessitated an evidentiary hearing.   In *Melton*, after concluding that a circuit court does not have authority to destroy an inaccurate PSI, our supreme court set forth *presentence* procedures "that ought to be employed when a party disputes a PSI."  *Id.*, ¶¶25, 64.  Specifically, "the defendant should file a motion with the court (1) identifying specific problems with the PSI, and (2) requesting specific remedies to deal with those problems."  *Id.*, ¶66.  "The remedies requested in the motion should be tailored to the problems alleged" and could include striking, redacting, or otherwise not

---

[6] At one point in Latta's appellate briefing, he states that because the "PSI was among the criteria upon which [the court] relied in deciding Mr. Latta's sentence, it was required to hold a hearing to determine the accuracy of the PSI."  Latta appears to argue that, whenever a defendant alleges that there is any error in a PSI, this automatically precludes the circuit court from relying on the other portions of the PSI.  Because Latta does not support this argument with any legal authority, we need not consider it further.  *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

considering the contested PSI portions at sentencing. *Id.*, ¶¶69, 71. Not only does Latta concede that he did not follow the presentence procedures recommended in *Melton* to secure a hearing on alleged inaccuracies in the PSI, but Latta's application of *Melton* to the postconviction setting also conflicts with the well-established standards that appellate courts apply, as set forth above, when determining whether an evidentiary hearing is required for a postconviction motion. Thus, we conclude that *Melton* did not entitle Latta to an evidentiary hearing on his postconviction motion.

### B. Latta Is Not Entitled to a Postconviction Evidentiary Hearing Under *Allen*.

¶26 Under the framework for determining whether an evidentiary hearing is required for a postconviction motion, as set forth above, "if the [postconviction] motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433 (citations omitted).

¶27 Because the material portions of the record conclusively demonstrate that Latta forfeited his argument that he is entitled to an evidentiary hearing on the alleged inaccuracies in the PSI, we reject Latta's claim.[7]

---

[7] Latta's postconviction motion characterizes trial counsel's failure to fully resolve the alleged PSI inaccuracies by seeking a "proper hearing" as a possible "waiver." This claim, however, is properly characterized as a "forfeiture." "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted). "[S]ome rights are forfeited when they are not claimed at trial; a mere failure to object constitutes a forfeiture of the right on appellate review." *Id.*, ¶30. Hence, the issue here is not

(continued)

13

### 1. Principles of Forfeiture.

¶28    "The [forfeiture] rule is not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice." ***State v. Huebner***, 2000 WI 59, ¶11, 235 Wis. 2d 486, 611 N.W.2d 727.  This rule serves two main objectives.  ***State v. Counihan***, 2020 WI 12, ¶¶26, 27, 390 Wis. 2d 172, 938 N.W.2d 530.   First, the forfeiture rule serves the efficient administration of justice by enabling the circuit court "to avoid or correct any error as it comes up, with minimal disruption of the judicial process and maximum efficiency," potentially eliminating the need for appeal.  ***Id.***, ¶26.  Second, the rule facilitates a fair process because a timely and contemporaneous objection "gives the parties and the circuit court notice of an issue and a fair opportunity to address the objection."  ***Id.***, ¶27.  The rule ensures that these dual objectives are met by "encourag[ing] attorneys to diligently prepare for and conduct trials" and "prevent[ing] attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal."  ***Id.*** (citing ***State v. Ndina***, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612).  Whether a party forfeited an argument is an issue of law that we review de novo.  ***State v. Mercado***, 2021 WI 2, ¶32, 395 Wis. 2d 296, 953 N.W.2d 337.

¶29    Because the forfeiture rule is designed to foster the fair, efficient, and orderly administration of justice, it should be applied only when its application would further these purposes.  *See* ***Counihan***, 390 Wis. 2d 172, ¶32.

---

whether Latta "waived" his right to request an evidentiary hearing or to otherwise rebut the alleged inaccuracies in the PSI, but whether Latta forfeited such a right.

Hence, there are circumstances in which a reviewing court may determine that it is "appropriate" to address the merits of an unpreserved issue.[8]  *Id.*, ¶27.  For example, in *Counihan*, the Supreme Court declined to apply forfeiture when a circuit court raised previously unknown information for the first time at sentencing and trial counsel failed to object.  *Id.*, ¶31.  The Supreme Court reasoned that applying forfeiture in that scenario, when the defendant had not had a chance to investigate or rebut the information, would hinder judicial economy by causing defendants to seek adjournments in order to investigate new information when raised by the circuit court at sentencing.  *Id.*, ¶32.  The Supreme Court acknowledged that while it would be "best practice" for defense counsel to raise such issues at the sentencing hearing, "it does not behoove the interests protected by the forfeiture rule to require such an objection."  *Id.*, ¶33.  By contrast, in *State v. Coffee*, 2020 WI 1, ¶32, 389 Wis. 2d 627, 937 N.W.2d 579 (lead op.), a plurality of justices stated that the forfeiture rule ordinarily applies to situations where the accuracy of a PSI is at issue.  The plurality reasoned that when it comes to contesting a PSI, "defense counsel receives a copy and has the opportunity to review the PSI with the defendant before the sentencing hearing.  And defense counsel can make a fully-informed and carefully-prepared objection to the contents of a PSI at sentencing."  *Id.*

¶30     Thus, in factual situations in which a defendant does not have access to certain information or the ability to investigate that information prior to sentencing, the defendant may properly challenge that error by raising it in a

---

[8]  A court may also disregard a forfeiture when a fundamental right is at stake, such as the right to the assistance of counsel, the right to refrain from self-incrimination, and the right to trial by jury.  *Ndina*, 315 Wis. 2d 653, ¶31.  These rights are "so important to a fair trial that courts have stated that the right is not lost unless the defendant knowingly relinquishes the right."  *Id.*

postconviction motion. *See Counihan*, 390 Wis. 2d 172, ¶36 ("Filing a postconviction motion is a timely means of raising an alleged error by the circuit court during sentencing." (citation omitted)); *see also Coffee*, 389 Wis. 2d 627, ¶31 (lead op.) ("[W]e conclude that the forfeiture rule does not apply to previously unknown, inaccurate information first raised by the prosecution at sentencing. Rather, while an objection may be the best practice, a postconviction motion is also a timely manner in which to assert that claim."). By contrast, when the defendant seeks to challenge information contained in the PSI to which the defendant had access and the ability to rebut in advance of sentencing, the defendant will ordinarily be precluded from raising that error in a postconviction motion. *See Counihan*, 390 Wis. 2d 172, ¶32; *State v. Mosley,* 201 Wis. 2d 36, 46, 547 N.W.2d 806 (Ct. App. 1996) ("Where the facts stated in a presentence report are not challenged or disputed by the defendant at the time of sentencing, the sentencing judge may appropriately consider them.").

¶31 We now apply these principles to Latta's postconviction motion.

### 2. Latta Forfeited His Right to Seek an Evidentiary Hearing.

¶32 The material portions of the record conclusively demonstrate that Latta is not entitled to relief because he failed to preserve the issue of the accuracy of the PSI for appellate review. *See State v. Pinno*, 2014 WI 74, ¶66, 356 Wis. 2d 106, 850 N.W.2d 207 (when the defendant failed to object to the circuit court closing the court room to the public during voir dire, the circuit court properly denied his postconviction motion without holding an evidentiary hearing on that issue).

¶33 As Latta conceded in his postconviction motion, and as the record conclusively demonstrates, he did not ensure that the accuracy of the PSI was

16

"fully resolved by a proper hearing" and never requested or moved for an evidentiary hearing prior to or during sentencing. Latta additionally conceded that he did not request any remedies from the circuit court regarding the alleged inaccuracies in the PSI, such as by moving to strike any of the disputed portions. Latta also conceded that he did not object when the court allegedly relied on the inaccuracies at sentencing. As summarized above, ten days prior to the sentencing hearing, Latta was explicitly ordered by the circuit court "to submit in writing any and all corrections or clarifications" to the PSI. The court specified that "[i]f the parties are in disagreement as to any such corrections or clarifications, those corrections or clarifications will be addressed at the sentencing hearing." *See Melton*, 349 Wis. 2d 48, ¶76 (stating that the court may address PSI disputes at the sentencing hearing). Consequently, Latta was on notice to prepare to rebut all alleged inaccuracies in the PSI at the sentencing hearing. The record indicates that Latta never objected to the court's decision to address whatever concerns he had about the accuracy of the PSI at the sentencing hearing nor, prior to his reply brief to this court on appeal, did he contend that he was deprived of an adequate opportunity to rebut the alleged inaccuracies.

¶34 Though Latta asserted in his postconviction motion that the circuit court "failed to make findings on the controverted issues of [the agent's] credibility and her PSI at the initial sentencing [hearing]," the record conclusively establishes that at the sentencing hearing, Latta never challenged the agent's credibility or the PSI. Latta had an opportunity at the hearing to thoroughly question the agent, who reaffirmed the statements she attributed to Latta in the PSI, but he did not attempt to present other witnesses or any evidence supporting an argument that the PSI was inaccurate. In their sentencing remarks, neither Latta nor trial counsel ever mentioned alleged errors in the PSI.

¶35    Additionally, Latta's failure to preserve any challenges to the PSI is not factually analogous to **Counihan**, in which the Supreme Court concluded that it was "appropriate" to disregard the forfeiture rule.  As explained above, both **Counihan** and **Coffee** recognize that applying the forfeiture rule does not promote the principles of fairness and judicial efficiency when previously unknown information is first raised at the sentencing hearing and the defendant has not had a chance to investigate or rebut the information.  **Counihan**, 390 Wis. 2d 172, ¶32; **Coffee**, 389 Wis. 2d 627, ¶¶31-32.  Latta's situation is akin to that of defendants who had access to the PSI and the ability to investigate and object to the accuracy of the information prior to sentencing.  *See* **Counihan**, 390 Wis. 2d 172, ¶¶34 n.9, 35; **Mosley**, 201 Wis. 2d at 46.  Though Latta was aware of the alleged errors in the PSI, besides questioning the agent, he took no steps to challenge or object to the contested PSI portions.

¶36    For the foregoing reasons, we conclude that a review of the material portions of the record indicate that Latta failed to preserve any factual objections to the PSI for appeal and that applying the forfeiture rule serves the fair and efficient administration of the judicial system.  *See* **Pinno**, 356 Wis. 2d 106, ¶66.  Therefore, the circuit court did not err in denying Latta's postconviction motion regarding alleged inaccuracies in the PSI without an evidentiary hearing.  *See id.*; **Ruffin**, 401 Wis. 2d 619, ¶28.

### III.  The Circuit Court Did Not Err in Denying Latta's Ineffective Assistance of Counsel Motion Without a *Machner* Hearing.

¶37    Having determined that Latta fails to demonstrate that the circuit court erred in not holding a postconviction hearing regarding the accuracy of the PSI, we now address his alternative argument that his trial counsel provided ineffective assistance of counsel.  *See State v. Erickson*, 227 Wis. 2d 758, 766,

596 N.W.2d 749 (1999) ("[T]he normal procedure in criminal cases is to address [a forfeited issue] within the rubric of the ineffective assistance of counsel."). Latta argues that his trial counsel was ineffective by failing to request an evidentiary hearing or otherwise rebut the alleged inaccuracies in the PSI, failing to request that the court refrain from considering these inaccuracies at sentencing, and failing to object to the court's alleged reliance on these inaccuracies at sentencing. For the following reasons, we conclude that the court properly denied Latta's ineffective assistance of counsel claim without holding a *Machner* hearing.

### A. Governing Principles of *Machner* Hearings.

¶38 We review whether a defendant is entitled to a *Machner* hearing using the same test as that used for other requests for postconviction evidentiary hearings, as set forth above. *See Ruffin*, 401 Wis. 2d 619, ¶¶35-38. In evaluating an ineffective assistance of counsel claim, we apply the well-established, two-prong *Strickland* test: "[A] defendant must demonstrate both that (1) counsel's representation was deficient, and (2) the deficiency was prejudicial." *Ruffin*, 401 Wis. 2d 619, ¶29; *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695; *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. "Both prongs of the inquiry need not be addressed if the defendant makes an insufficient showing on one." *Ruffin*, 401 Wis. 2d 619, ¶29.

¶39 In order to show deficient performance, a defendant must allege "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and must establish that counsel's representation fell below an objective standard of reasonableness

considering all the circumstances. *Strickland*, 466 U.S. at 687; *Carter*, 324 Wis. 2d 640, ¶22.

¶40 Even if trial counsel performed effectively in most regards, trial counsel's performance may still be ineffective based on a single, prejudicial error. *United States v. Cronic*, 466 U.S. 648, 657 n.20 (1984) ("[T]he type of breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole—specific errors and omissions may be the focus of a claim of ineffective assistance as well." (citing *Strickland*, 466 U.S. at 693-96)). Hence, even an attorney who performs effectively in most aspects of representation can commit a single error that may result in prejudicing a defendant.

¶41 To prove prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Balliette*, 2011 WI 79, ¶24, 336 Wis. 2d 358, 805 N.W.2d 334 (citation omitted). "It is not sufficient for the defendant to show that … counsel's errors 'had some conceivable effect on the outcome of the proceeding.'" *Carter*, 324 Wis. 2d 640, ¶37 (citation omitted). Rather, "[a] 'reasonable probability' in this context means 'a probability sufficient to undermine confidence in the outcome.'" *Jackson*, 405 Wis. 2d 458, ¶10 (citation omitted). "The focus of the inquiry is not on the outcome of the trial, but on 'the reliability of the proceedings.'" *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62 (citation omitted).

¶42 Ineffective assistance claims present mixed issues of fact and law. *Balliette*, 336 Wis. 2d 358, ¶19. We will uphold the circuit court's factual

findings "unless shown to be clearly erroneous," but "[t]he ultimate conclusion as to whether there was ineffective assistance of counsel is a question of law." *Id.*

¶43  Like most other postconviction motions, a circuit court may deny a postconviction motion for a *Machner* hearing if sufficient material and non-conclusory facts, assuming them to be true, do not entitle a movant to relief or if the record conclusively demonstrates that the movant is not entitled to relief. *Allen*, 274 Wis. 2d 568, ¶12.  Concerning the latter situation, we must determine whether the record conclusively demonstrates either that trial counsel's performance was not deficient or that Latta was not prejudiced.  *See id.*  Because we conclude that the material portions of the record conclusively demonstrate that any deficiency of trial counsel did not prejudice Latta, the circuit court was not required to hold a *Machner* hearing.

### B. The Record Conclusively Demonstrates That Latta Is Not Entitled to Relief.

¶44  Latta's postconviction motion did not recognize and apply *Strickland*'s prejudice prong of an ineffective assistance of counsel claim—*i.e.*, that there was a "reasonable probability" that, but for trial counsel's deficiencies, Latta's sentence would be more favorable.  *See Balliette*, 336 Wis. 2d 358.  Rather, Latta argued that the alleged inaccuracies in the PSI "infected" and "poisoned" the circuit court's sentencing decision, improperly influencing the court to "quadruple[]" the one-year jail sentence jointly recommended by the parties.  But this is not the legal standard we apply in evaluating whether Latta was prejudiced by counsel's alleged deficiencies.  On appeal, Latta also fails to apply the *Strickland* prejudice standard in discussing his ineffective assistance of

counsel claim, rendering this claim undeveloped.[9] *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (stating that this court may decline to address undeveloped arguments). We could reject Latta's ineffective assistance of counsel claim on that basis, but we choose to proceed to the merits.

¶45 Even if Latta had properly analyzed the prejudice prong, we conclude that the material portions of the record conclusively establish that Latta was not prejudiced by counsel's alleged deficiencies. In other words, there was not a "reasonable probability" of a more favorable sentencing outcome had trial counsel attempted to rebut the alleged inaccuracies in the PSI or objected to the circuit court's consideration of these alleged deficiencies. Latta is therefore not entitled to relief. In reaching this conclusion, we assume without deciding that the record conclusively shows that trial counsel's performance was deficient in not attempting to rebut or object to the alleged inaccuracies.[10] We consider six main

---

[9] Latta's arguments at various points in his briefing conflate the prejudice standard we apply in an ineffective assistance of trial counsel claim, *see State v. Ruffin*, 2022 WI 34, ¶35, 401 Wis. 2d 619, 974 N.W.2d 432, with the harmless error standard that we apply in a due process claim for resentencing because of a circuit court's use and reliance on inaccurate information, *see State v. Tiepelman*, 2006 WI 66, ¶¶26, 31, 291 Wis. 2d 179, 717 N.W.2d 1. The conflation of a due process claim with an ineffective assistance of counsel claim may have resulted from Latta's reliance on *State v. Anderson*, 222 Wis. 2d 403, 588 N.W.2d 75 (Ct. App. 1998), which our supreme court has explained "came perilously close to conflating its analysis of the due process challenge with the claim of ineffective assistance of counsel." *Tiepelman*, 291 Wis. 2d 179, ¶23 (citing *Anderson*, 222 Wis. 2d at 410). We address Latta's ineffective assistance of counsel argument, which is the specific claim he pursues on appeal.

[10] Although it is not pertinent to our analysis, we note that in the circuit court's order denying Latta's postconviction motion, the court determined that Latta's counsel did not perform deficiently because he performed effectively in most aspects of his representation. As discussed above, however, a successful ineffective assistance of counsel claim may be limited to one or more specific errors by counsel, regardless of counsel's effective performance in most other areas. *See United States v. Cronic*, 466 U.S. 648, 657 n.20 (1984) (citing *Strickland v. Washington*, 466 U.S. 668, 693-96 (1984)). We need not decide whether Latta's counsel performed deficiently because, as explained in the text, the alleged deficiencies were not prejudicial. *See State v. Earl*, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755 ("On appeal, we may affirm on different grounds than those relied on by the trial court.").

factors in determining that trial counsel's assumed deficiencies did not prejudice Latta.

¶46     First, the record conclusively shows that the circuit court's sentencing decision did not reference the alleged inaccurate statements in the PSI attributed to Latta, but merely referenced the PSI generally.  Hence, we reject Latta's conclusory assertions that the alleged inaccurate statements attributed to him "poisoned" or "infected" the court's sentencing decision.

¶47     Second, the record shows that the portions of the PSI that the circuit court did reference at sentencing regarding Latta's continued denial of responsibility for his criminal conduct were the agent's subjective impressions as a result of her entire investigation, fittingly summarized in a section of the PSI titled "Agent Impressions."[11]   The agent explained at the sentencing hearing that she compiled the PSI using multiple sources, including a questionnaire that Latta filled out, a phone call that she had with Latta, and interviews with Latta's family members.

¶48     As this court has explained, "[t]he purpose of the PSI is to do more than simply compile the factual background regarding a specific defendant." *State v. Howland*, 2003 WI App 104, ¶34, 264 Wis. 2d 279, 663 N.W.2d 340.  Rather,

---

[11] Latta identifies two statements of the circuit court at sentencing which specifically referenced the PSI:  (1) "The Presentence Investigation prepared by the Department of Corrections indicates that [Latta] refuses to take responsibility for [his] actions and continually ha[s] claimed the victims to be lying"; and (2) "The Presentence Investigation indicates that without incarceration [Latta] [is] likely to continue to victimize [A.F.B.], her sister, as well as create more victims."  These references by the court to the PSI are a near verbatim recitation of the following statements in the "Agent Impressions" section of the PSI:  (1) "It is abundantly clear that [Latta] refuses to take responsibility for his actions and continually claims the victims are lying"; and (2) "If [Latta] is not incarcerated he will continue to victimize these minors and he is likely to create more victims."

23

the PSI "contains a variety of areas where the PSI writer is able to make discretionary determinations." *Id.* "[The agent impressions] portion of the PSI involves the writer's subjective feelings regarding the defendant to be sentenced." *Id.* Hence, we are unclear as to how the agent's subjective impressions were capable of being proved or disproved, even had the circuit court held an evidentiary hearing on the alleged inaccuracies in the PSI.

¶49 Third, the record supports the agent's subjective impression that, after his plea, Latta continued to deny responsibility for his criminal conduct. The "Defendant's Version" section of the PSI contains the following statement: "The defendant mentioned that [A.F.B.] and [R.G.B.] would call him often and tell him they love him. He believes that is a clear sign they were not being abused." Although Latta's postconviction motion disputed some other statements attributed to him in this section of the PSI, Latta did not dispute the accuracy of this statement. Consequently, even if Latta were successful in proving at an evidentiary hearing that he never made the disputed statements to the agent, the agent's subjective opinion that Latta continued to deny responsibility for his criminal conduct even after his plea is supported by the record. Hence, any objection by trial counsel to the court's recognition of the agent's impression that Latta continued to deny responsibility for his criminal conduct would have been without a basis.

¶50 Fourth, rather than being "infected" or "poisoned" by the allegedly inaccurate statements in the PSI, the circuit court's statements that Latta had previously denied his criminal conduct and blamed the victims are independently corroborated by the record. As previously referenced, Latta's own sentencing

materials submitted to the court referenced his prior denials of his criminal conduct and his victim-blaming statements.[12] At sentencing, the court specifically referenced Dr. Kelley's psychosexual report of Latta: "The assessment prepared by Dr. Kelley indicates … that you deny the current and previous sexual assault allegations. And that when asked about the allegations by [A.F.B.], you denied touching her in a sexual manner." The court also referenced this assessment as evidence that Latta had previously accused the victims of lying: "I acknowledge and appreciate the work that went into Dr. Kelley's evaluation. I have read it. I have considered it. Frankly I have concerns, Mr. Latta, about your amenability to treatment in light of your previous denials and apparent victim blaming." These references to Dr. Kelley's assessment demonstrate that, even if Latta's trial counsel succeeded in disproving the contested statements in the PSI, any objection to the court's statements would have failed because the record shows that the court had a factual basis for referencing Latta's previous denials of his criminal conduct and victim blaming.

¶51 Fifth, we see nothing improper about the following sentencing statements by the circuit court which Latta argues were improperly influenced by the alleged inaccuracies in the PSI: "I am not impressed by [Latta's] lack of insight. And it is unclear to me how or whether [he has] made any attempt to analyze and address [his] actions in a meaningful or positive way." These

---

[12] Latta's psychosexual evaluation prepared by Dr. Kelley, which he attached to his sentencing memorandum, stated in relevant part that "Mr. Latta denied the current and previous sexual assault allegations" and that, "[w]hen asked about the allegations by [A.F.B.], Mr. Latta denied ever touching her in a sexual manner." This assessment also referenced the victim-blaming nature of Latta's denials when it stated that Latta's alleged justification for buying a vibrator for A.F.B., who was approximately ten years old at the time, was purportedly to address alleged sexualized behavior with peers and to prevent her from getting pregnant.

statements are supported by the record. For instance, Latta's own sentencing memorandum alludes to Latta's struggle to understand the scope of the effects that his abusive conduct had on his young relatives: "While he may not have the sophistication to appreciate what is meant by grooming, he acknowledges that he failed to observe necessary and proper boundaries, such as when he purchased … a vibrator for AFB or when he caused her to read sexual stories." Further, the record shows no "rehabilitative" actions by Latta prior to sentencing to address his admitted conduct of sexually abusing a child in his family. Hence, any objection to these sentencing statements would have failed.

¶52 Sixth, Latta has not demonstrated that, even if he had been granted an evidentiary hearing or objected to the circuit court's various sentencing statements, these occurrences would have had any bearing on the circuit court's exercise of sentencing discretion such that he would have received a more favorable sentence. The court's primary focus in imposing its sentence was on the seriousness of the offense and the need to protect the victims and the public, which are well-established sentencing factors.[13] *See* ***Gallion***, 270 Wis. 2d 535, ¶44; WIS. STAT. § 973.017(2). Further, the court appropriately balanced Latta's positive and negative character traits in determining that Latta's rehabilitation was best accomplished in a confined setting. Latta sets forth no reason for us to conclude that his sentence would have been more favorable had he been granted a hearing on the alleged inaccuracies in the PSI or objected to the court's sentencing statements with which he takes issue.

---

[13] The circuit court specifically said that "[t]he seriousness of the offense and the protection of the public require a period of incarceration in a strict and structured environment."

26

¶53    Finally, we reject Latta's argument that *State v. Anderson*, 222 Wis. 2d 403, 588 N.W.2d 75 (Ct. App. 1998), requires us to conclude that trial counsel's failure to request an evidentiary hearing on the accuracy of the PSI prejudiced Latta.  In that case, Anderson pled no contest to two counts of first-degree sexual assault of a child, which involved sexual touching, and two counts of causing mental harm to a child.  *Id.* at 404-05.  At the sentencing hearing, Anderson's counsel alerted the circuit court that the defense had received the PSI only one half-hour before the scheduled sentencing hearing, that the victims' statements were partially inaccurate, that information derived from police reports was determined to be untrue, and that some of the more serious, aggravated allegations of sexual abuse contained in the PSI not at issue in the case had been investigated and found to be baseless.  *Id.* at 405.  Although the court offered to adjourn the sentencing hearing so that the defense could have more time to prepare, Anderson consulted with counsel and decided to continue with sentencing.  *Id.* at 406.  The court imposed an 80-year sentence, reasoning that some of Anderson's conduct as detailed in the PSI "make this some of the most aggravated violations I have ever heard about or read about." *Id.* at 406-07.

¶54    Anderson filed a postconviction motion alleging that the circuit court relied on inaccurate information when sentencing him and that his counsel provided ineffective assistance by:  failing to request a continuance so that he and Anderson could read the entire PSI; failing to investigate the inaccuracies in the PSI; and failing to submit evidence that other men had committed the severe abuse of the children detailed in the PSI that were not at issue in the case.  *Id.* at 407.

¶55    On appeal, this court reversed and determined that Anderson's trial counsel performed deficiently by failing to request an evidentiary hearing to resolve the accuracy of the PSI and that this deficiency was prejudicial because the

circuit court relied on the allegations of sexual abuse set forth in the PSI that were later recanted. *Id.* at 410.

¶56 In this appeal, Latta argues that there is "no daylight" between *Anderson* and his fact situation. We disagree. In *Anderson*, this court explained that the disputed allegations in the PSI described "far more serious and aggravating conduct" than the conduct underlying the offense to which Anderson pled. *Id.* at 411. By contrast, here, the disputed portions of the PSI merely involve statements Latta made to the PSI author regarding whether he continued to deny his criminal conduct after entering his plea. These contested statements come nowhere near the severity of the undisputed incorrect information in the *Anderson* PSI.

¶57 Additionally, we determined in *Anderson* that "it is clear that some of the PSI's allegations which Anderson did challenge influenced the court's assessment of Anderson's character and the gravity of his offenses and its conclusion that a very lengthy sentence was necessary." *Id.* Here, as explained above, the record conclusively demonstrates that the circuit court appropriately weighed Latta's negative and positive character traits and relied on the gravity of Latta's offense and the need to protect the public in determining his sentence. To repeat, the sentencing court did not reference the disputed statements the PSI attributed to Latta but rather the agent's subjective impressions resulting from her entire investigation. Further, the agent's impression that Latta denied responsibility for his criminal conduct is supported when examining the entire record. Thus, *Anderson* does not support Latta's argument.

¶58 For the reasons articulated above, we conclude that the record conclusively demonstrates that there was not a "reasonable probability" that

Latta's sentence would have been more favorable but for trial counsel's assumed deficiencies. Consequently, Latta was not prejudiced by trial counsel's conduct, and he was not entitled to a *Machner* hearing on his ineffective assistance of counsel claim.

## CONCLUSION

¶59 For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.